# EXHIBIT 10

| To: | Float Alaska IP LLC (tina-pto@lozaip.com) |
|---|---|
| Subject: | U.S. Trademark Application Serial No. 90773348 - NORTHERN PACIFIC - FLOAT-219 |
| Sent: | May 02, 2022 05:04:52 PM |
| Sent As: | ecom112@uspto.gov |
| Attachments: | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 90773348

**Mark:** NORTHERN PACIFIC

**Correspondence Address:**
Christina S. Loza
LOZA & LOZA, LLP
305 NORTH 2ND AVENUE #127
UPLAND CA 91786

**Applicant:** Float Alaska IP LLC

**Reference/Docket No.** FLOAT-219

**Correspondence Email Address:**
 tina-pto@lozaip.com

# FINAL OFFICE ACTION

The USPTO must receive applicant's response to this letter within  six months of the issue date below or the application will be **abandoned**. Respond using the Trademark Electronic Application System (TEAS) and/or Electronic System for Trademark Trials and Appeals (ESTTA).  A link to the appropriate TEAS response form and/or to ESTTA for an appeal appears at the end of this Office action.

Issue date: May 02, 2022

INTRODUCTION

This Office action is in response to applicant's communication filed on January 28, 2022.

In a previous Office action(s) dated September 23, 2021, the trademark examining attorney refused registration of the applied-for mark based on the following: Trademark Act Section 2(d) for a likelihood of confusion with a registered mark. In addition, applicant was required to satisfy the following requirement(s): Amend the identification of goods and/or services.

Based on applicant's response, the trademark examining attorney notes that the following requirement(s) have been satisfied: definite amended identification provided. *See* TMEP §§713.02, 714.04.

Further, the trademark examining attorney maintains and now makes FINAL the refusal in the summary of issues below. *See* 37 C.F.R. §2.63(b); TMEP §714.04.

SUMMARY OF ISSUES MADE FINAL that applicant must address:
- SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION

SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION

For the reasons set forth below, the refusal under Trademark Act Section 2(d) is now made FINAL with respect to U.S. Registration Nos. 3421163, 3421164, and 5007556. *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.63(b).

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 3421163, 3421164, and 5007556. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* See the previously attached registrations. Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the services of the parties. *See* 15 U.S.C. §1052(d). Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors"). *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017). Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case." *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services. *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

Applicant has applied to register the mark NORTHERN PACIFIC in standard characters for "Transportation services, namely, airline transportation services; providing transportation services in the nature of airline travel; providing airline services for transporting passengers; providing transportation services in the nature of transporting passengers by air; transportation of passengers by air; providing information in the field of air travel and air transportation by electronic means; providing a website in the field of air travel; air charter transportation services" in International Class 039.

Registrant BNSF Railway Company owns the following registrations:
- (RN: 3421163 for the mark NORTHERN PACIFIC in standard characters for "Railroad transportation services" in International Class 039.
- (RN: 3421164 for the mark NORTHERN PACIFIC in stylized text with a design for "Railroad transportation services" in International Class 039
- (RN: 5007556 for the mark NORTHERN PACIFIC RAILWAY in stylized text with a design (RAILWAY disclaimed) for "railway transportation services" in International Class 039.

Comparison of the Marks

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

When comparing marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in

terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b). The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks. *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014); *Geigy Chem. Corp. v. Atlas Chem. Indus., Inc.*, 438 F.2d 1005, 1007, 169 USPQ 39, 40 (C.C.P.A. 1971)), *aff'd per curiam* , 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b). In the present case, the impression left by each of the marks is that of NORTHERN PACIFIC

In the case of the cited mark of Reg. No. 3421163, applicant's mark is NORTHERN PACIFIC and registrant's mark is NORTHERN PACIFIC, both in standard characters. These marks are identical in appearance, sound, and meaning, "and have the potential to be used . . . in exactly the same manner." *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1411 (TTAB 2015), *aff'd,* 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017). Additionally, because they are identical, these marks are likely to engender the same connotation and overall commercial impression when considered in connection with applicant's and registrant's respective or services. *Id.* Therefore, the marks are confusingly similar.

The presence of design elements in the mark of cited Reg. Nos. 5007556 and 3421164 do not obviate likely consumer confusion. When evaluating a composite mark consisting of words and a design, the word portion is normally accorded greater weight because it is likely to make a greater impression upon purchasers, be remembered by them, and be used by them to refer to or request the services. *In re Aquitaine Wine USA, LLC*, 126 USPQ2d 1181, 1184 (TTAB 2018) (citing *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012)); TMEP §1207.01(c)(ii). Thus, although marks must be compared in their entireties, the word portion is often considered the dominant feature and is accorded greater weight in determining whether marks are confusingly similar, even where the word portion has been disclaimed. *In re Viterra Inc.*, 671 F.3d at 1366-67, 101 USPQ2d at 1911 (citing *Giant Food, Inc. v. Nation's Foodservice, Inc.* , 710 F.2d 1565, 1570-71, 218 USPQ2d 390, 395 (Fed. Cir. 1983)). In the case of the cited mark NORTHERN PACIFIC and design and NORTHERN PACIFIC RAILWAY and design, the word portions of these cited marks form the dominant portion of these marks. Because the dominant portion of these cited marks and the applicant's mark are identical, the marks convey the same commercial impression.

With respect to the cited mark NORTHERN PACIFIC RAILWAY, it should be noted that although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Nat'l Data Corp.* , 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii). Disclaimed matter that is descriptive of or generic for a party's goods and/or services is typically less significant or less dominant when comparing marks. *In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); TMEP §1207.01(b)(viii), (c)(ii). Because the word RAILWAY is disclaimed in NORTHERN PACIFIC RAILWAY, the words NORTHERN PACIFIC are more significant and dominant in creating the mark's commercial impression. Those words and their commercial impression is the same as that of the cited mark. Because the marks create the same commercial impression, the marks are considered similar for likelihood of confusion purposes.

<u>Relatedness of the Services</u>

The compared services need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP §1207.01(a)(i). They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

Determining likelihood of confusion is based on the description of the goods and/or services stated in the application and registration at issue, not on extrinsic evidence of actual use. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1307, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018) (citing *In re i.am.symbolic, llc*, 866 F.3d 1315, 1325, 123 USPQ2d 1744, 1749 (Fed. Cir. 2017)).

In addition to the previously attached evidence, the newly attached evidence from the weblinks below, establishes that the same entity commonly provides the relevant services namely airline and air charter transportation services on the one hand, and rail freight transportation services on the other hand, and markets the services under the same mark. This evidence also includes entities that provide both information in the field of air travel and air transportation by electronic means, providing a website in the field of air travel and railroad transportation services.

Oceana Logistics: www.oglus.com/pages/services/ocean-air-land.php (Air and rail transportation)

BDG International: www.bdginternational.com/international-shipping-logistics-services/ (Air and rail transportation)

STG Logistics: www.stgusa.com/cfs/ (Air and rail transportation)

DB Schenker: www.dbschenker.com/usa/products/land-transport
DB Schenker: www.dbschenker.com/usa/products/air-freight

Sky Harbor – Airport: www.skyharbor.com/
Sky Harbor – Airport Train: www.skyharbor.com/PHXSkyTrain

Watco – Air: www.watco.com/service/transportation-service/ocean-air-transportation/ Air and rail transportation)
Watco – Rail: www.watco.com/service/rail/

Caltrain – About:  www.caltrain.com/about.html
Caltrain – Airport Information:  www.caltrain.com/riderinfo/destinations/Airports.html

MTA – Airport Information:  https://new.mta.info/guides/airports
MTA – Subway  https://new.mta.info/map/5256

JFK – Airport:  https://jfkairport.com/
JFK – Train:  https://jfkairport.com/to-from-airport/air-train

BART – About:  www.bart.gov/about
BART – Airport info:  www.bart.gov/guide/airport/oak

Newark – Air Train:  www.newarkairport.com/to-from-airport/air-train
Newark - Airport:  https://newarkairport.com/

NJ Port Authority – Airports:  www.panynj.gov/airports/en/index.html
NJ Port Authority – Rail:  www.panynj.gov/path/en/index.html

Thus, applicant's and registrant's services are considered related for likelihood of confusion purposes.   *See, e.g.*, *In re Davey Prods. Pty Ltd.*, 92 USPQ2d 1198, 1202-04 (TTAB 2009); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1268-69, 1271-72 (TTAB 2009).

*Applicant's Arguments*

In its response, applicant argues that the marks are distinguished by their services and that the marks exist in a crowded field.  The Examining Attorney has considered applicant's arguments and finds them unpersuasive for the reasons set forth below.

The fact that the services of the parties differ is not controlling in determining likelihood of confusion.  The issue is not likelihood of confusion between particular services, but likelihood of confusion as to the source or sponsorship of those services.  *In re Majestic Distilling Co.*, 315 F.3d 1311, 1316, 65 USPQ2d 1201, 1205 (Fed. Cir. 2003); *In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1689 (Fed. Cir. 1993); TMEP §1207.01.  Where the marks are identical and highly similar as in the present case, confusion as to the source of services offered under the marks is likely.

Moreover, where the marks of the respective parties are identical or virtually identical, as in this case, the degree of similarity or relatedness between the services needed to support a finding of likelihood of confusion declines.  *See In re Country Oven, Inc.*, 2019 USPQ2d 443903, at *5 (TTAB 2019) (citing *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1411 (TTAB 2015), *aff'd* , 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017)); TMEP §1207.01(a); *see also In re Shell Oil Co.*, 992 F.2d 1204, 1207, 26 USPQ2d 1687, 1689 (Fed. Cir. 1993). In this case, the applied-for mark, NORTHERN PACIFIC, and the registered marks, NORTHERN PACIFIC, NORTHERN PACIFIC, and NORTHERN PACIFIC RAILWAY, are identical or virtually identical, and as such, the degree of similarity or relatedness between the services needed to support a finding of likelihood of confusion is reduced.

Finally, in addition to the evidence demonstrating relatedness of the parties' services, with respect to applicant's contention that the marks are exist in a crowded field, the overriding concern is not only to prevent buyer confusion as to the source of the goods and/or services, but to protect the registrant from adverse commercial impact due to use of a similar mark by a newcomer.  *See In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993).  Therefore, any doubt regarding a likelihood of confusion determination is resolved in favor of the registrant.  TMEP §1207.01(d)(i); *see Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265, 62 USPQ2d 1001, 1003 (Fed. Cir. 2002); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 464-65, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988).  Here, where the marks are identical and highly similar, confusion as to the source of services offered under the marks is likely because transportation services are related and provided in same channels of trade.

Accordingly, the services are considered related for purposes of the likelihood of confusion analysis.

<u>Conclusion</u>

Because the marks are similar and the services are related, there is a likelihood of confusion as to the source of applicant's services.   Therefore, applicant's mark is not entitled to registration.

Based on the foregoing, the refusal to register under Trademark Act Section 2(d) is continued and made FINAL.

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration.

**How to respond.  Click to file a request for reconsideration of this final Office action** that fully resolves all outstanding requirements and refusals **and/or  click to file a timely appeal to the Trademark Trial and Appeal Board (TTAB)** with the required filing fee(s).

/Charles F. Miller/
Charles F. Miller
Examining Attorney
Law Office 112

(571) 272-8123
charles.miller1@uspto.gov

## RESPONSE GUIDANCE

- **Missing the response deadline to this letter will cause the application to** abandon.  A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period.  TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to** abandon.  If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant.  If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find** **contact information for the supervisor** of the office or unit listed in the signature block.



## OUR SERVICES
### OCEAN, AIR AND LAND FREIGHT
The perfect solution for your shipping needs.

## OCEAN FREIGHT

Oceana Global Logistics provides full ocean freight services to move your commercial and project cargo all over the world. We leverage our long-standing relationships with our carrier partners to provide you with efficient and economical solutions for all your shipping needs.

Our extensive network of Full Container Load (FCL) carriers can accommodate almost any shipment. Our freight consolidation service offers the flexibility to tailor to your individual cargo needs. We handle all types of freight, whether containerized or not, including automobiles, commercial and general cargo.

Oceana Global Logistics is a one-stop shop, offering intermodal transport solutions to accommodate any supply chain. We coordinate inland transportation for the door-to-door collection and delivery of your freight in a timely manner. We provide customs services and our team of customs brokerage experts handle custom clearance and document handling. All of our integrated services are supported by web-based tracking systems, ensuring the visibility of your shipment every step of the journey.

Whether your shipment is big or small, personal or commercial, our shipping agents will work with you one-on-one to secure the most efficient and cost-effective ocean freight solution.



## AIR FREIGHT

Over our wide network of air routes, Oceana Global Logistics can deliver your cargo anywhere in the world in a matter of hours. We offer direct service from most major US airports ensuring the safe delivery of your air freight on time, every time.

Whether you require large-scale, multiport air freight distribution and supply chain management, or single door to door air freight shipment, our experts will work closely with you to find the quickest, most reliable and cost-efficient route to ship your commercial goods.

Our service doesn't stop on the runway. Our shipping agents can arrange for multimodal transport of your shipment to and from the airport, provide warehousing, packing and



4:44:57 PM 5/2/2022



## International Shipping Logistics Services

At BDG, we provide our clients with a complete range of International Shipping Logistics services: Air, Ocean: FCL / LCL / Breakbulk, Truck, and Rail. Our team members are trained in handling freight of all types and commodities: DG, Oversize, Perishable, Sensitive, Fragile and High Value. We offer complete export documentary support for L/C's, Legalization, Drafts, C of O's and inspection services.

BDG is a licensed NVOCC with tariffs on file with the Federal Maritime Commission, we offer International Shipping Logistics services to all major ocean ports on a weekly basis, smaller ports are serviced via feeder vessel and road connections. As an IATA Air Forwarder we provide International Shipping Logistics service to all major airports throughout the world. BDG is fully licensed with the TSA to offer International Shipping Logistics services on passenger flights and has a certified C-TPAT security program.

With our network of carriers we can arrange to pick up or deliver of your freight anywhere in the USA and export / import your product from / to the nearest most convenient North American ocean or airport. Utilizing our vast agent network of over 170 International Shipping Logistics agents worldwide, BDG provides Door Delivery: DAP or DDP, with POD information as required.

Complete tracking details on all ocean and air shipments are e-mailed to your attention.

### SEND US A MESSAGE

If you have questions or comments, please send us a message and a representative will contact you shortly.











## PHX Sky Train® Shutdowns Scheduled

Please visit the PHX Sky Train® Shutdown page for current closure periods.

**NOTE:** Shuttle buses arrive every 20 minutes on average during overnight hours when the PHX Sky Train® is not operating.

### Phase 2

Phase 2 of the PHX Sky Train® is underway. This extension of the existing PHX Sky Train® to the Rental Car Center is scheduled to be complete and operational in 2022, the line will extend 2.5 miles. This project costs $745 million and is being paid for with Rental Car Customer Facility Charges and airline Passenger Facility Charges. No local tax dollars will be used.

View pictures and updates as they become available.

### What is the PHX Sky Train®?

The PHX Sky Train® is an automated train that transports travelers between Valley Metro Rail at 44th and Washington streets, the East Economy Parking area and airport terminals.

**Trains arrive and depart every 3-5 minutes and operates 24 hours a day.**

### How much will it cost to ride?

The PHX Sky Train® is free to the public.

### Station Amenities 44th Street & Washington

- Boarding pass kiosks – print your boarding pass with participating airlines before arriving at the terminal.
- Valley Metro Rail Ticket Machines – purchase your Valley Metro Rail tickets after arriving at the station. Ticket kiosks are located on Level 2.
- Cell Phone Waiting Lot
- Pet Park
- Four hour parking meters
- Dropping off or picking up travelers using Terminal 4? The 44th Street & Washington PHX Sky Train® Station offers a handy alternative to driving into the Airport.

### Terminal 3

- Located on Level 2, travelers can disembark the PHX Sky Train® and walk to the security checkpoint to catch their flight.

### Terminal 4

- Conveniently located on Level 3, travelers can disembark the PHX Sky Train® and walk directly to the security checkpoint to catch their flight.



**Watco Ocean and Air Services**

Deliver your imports and exports to almost anywhere in the world. As an international freight forwarder, we are licensed as a Non-Vessel-Operating Common Carrier and an Indirect Air Carrier. We can book space for any type of shipment on all major ocean carriers – or arrange for air transportation of your cargo while following strict Transportation Security Administration requirements.

- Federal and international document preparation
- Voyage management and tracking
- Customs clearance
- Drayage/final-mile service
- Vessel chartering







### San Jose Mineta International Airport (SJC)

VTA Route #60 provides service to and from the Santa Clara Caltrain Station and San Jose Mineta Airport with opportunities to connect to larger transit centers like the Milpitas Bart Transit Center and the Winchester Transit Center. Visit the VTA Route 60 webpage.

### San Francisco International Airport (SFO)

SamTrans and BART provide service from Caltrain to the San Francisco International Airport. Samtrans Route SFO picks up Caltrain customers on the southbound platform and delivers them to all terminals at SFO (Route SFO is free for Caltrain 2-zone+ monthly pass holders).

### Oakland International Airport (OAK)

South Bay and Peninsula travelers can ride Caltrain to BART for a traffic-free trip to the Oakland International Airport. Caltrain customers can connect with BART at the Millbrae station, then ride BART to its Coliseum station. Take the BART Oakland Airport people mover from Coliseum BART to the airport.

Tags
San Jose Mineta    SJC    airport



# Taking public transit to New York-area airports

JFK, LaGuardia, and Newark airports are accessible via public transit. Here are some options for how to get there.

## General tips

- Buy tickets or add value to your MetroCard before you travel to avoid long lines at the airport and other potentially crowded areas. You can also use OMNY on all subways and buses — but note that it does not work to pay your AirTrain fare.
- Consider the luggage you're taking with you. You're likely to encounter crowded vehicles and stairs on your way.
- Taxi fare to JFK from Manhattan is at least $52. Taxis to LaGuardia use the standard metered fare. Here are all the details.

## Helpful phone apps

- **MYmta**, for transit directions, maps, real-time service updates, and more (iPhone, Android)
- **MTA eTix**, for buying and managing tickets for the Long Island Rail Road and Metro-North Railroad (iPhone, Android)

## Step-by-step instructions and fare information




**How to get to JFK**



**How to get to LaGuardia**



**How to get to Newark airport/EWR**





















| To: | Float Alaska IP LLC (tina-pto@lozaip.com) |
|---|---|
| Subject: | U.S. Trademark Application Serial No. 90773348 - NORTHERN PACIFIC - FLOAT-219 |
| Sent: | May 02, 2022 05:04:55 PM |
| Sent As: | ecom112@uspto.gov |
| Attachments: | |

### United States Patent and Trademark Office (USPTO)

### USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on **May 02, 2022** for
### U.S. Trademark Application Serial No. 90773348

A USPTO examining attorney has reviewed your trademark application and issued an Office action.  You must respond to this Office action in order to avoid your application abandoning.  Follow the steps below.

**(1) Read the Office action.** This email is NOT the Office action.

**(2) Respond to the Office action by the deadline** using the Trademark Electronic Application System (TEAS).  Your response must be received by the USPTO on or before 11:59 p.m. **Eastern Time** of the last day of the response period.  Otherwise, your application will be abandoned.  See the Office action itself regarding how to respond.

**(3) Direct general questions** about using USPTO electronic forms, the USPTO website, the application process, the status of your application, and whether there are outstanding deadlines to the Trademark Assistance Center (TAC).

After reading the Office action, address any question(s) regarding the specific content to the USPTO examining attorney identified in the Office action.

## GENERAL GUIDANCE

· **Check the status** of your application periodically in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

· **Update your correspondence email address** to ensure you receive important USPTO notices about your application.

· **Beware of trademark-related scams.**  Protect yourself from people and companies that may try to take financial advantage of you.  Private companies may call you and pretend to be the USPTO or may send you communications that resemble official USPTO documents to trick you.  We will never request your credit card number or social security number over the phone.  And all official USPTO correspondence will only be emailed from the domain "@uspto.gov."   Verify the correspondence originated from us by using your Serial Number in our database, TSDR, to confirm that it appears under the "Documents"  tab, or contact the Trademark Assistance Center.

· **Hiring a U.S.-licensed attorney.**  If you do not have an attorney and are not required to have one under the trademark rules, we encourage you to hire a U.S.-licensed attorney specializing in trademark law to help guide you through the registration process.  The USPTO examining attorney is not your attorney and cannot give you legal advice, but rather works for and represents the USPTO in trademark matters.